# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**October 11, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: A.L.

No. 16-0510 (Ohio County 15-JA-111)

## MEMORANDUM DECISION

Petitioner Father J.L., by counsel Richard W. Hollandsworth, appeals the Circuit Court of Ohio County's March 11, 2016, order that terminated his parental rights to A.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Karen Kahle, filed a response on behalf of the child also in support of the circuit court's order. The DHHR and the guardian also filed a joint supplemental appendix. On appeal, petitioner alleges that the circuit court erred in terminating his parental rights because (1) he could not have abused the child in January of 2013 due to his incarceration in June of 2012; (2) the circuit court based its termination upon his criminal record and history of substance abuse; and (3) the circuit court failed to assure that petitioner will continue to have an "appropriate, nurturing, and healthy relationship" with the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2015, the DHHR filed an abuse and neglect petition that alleged the child's mother repeatedly abused drugs in the child's presence. According to the DHHR, the mother's drug abuse caused her to neglect the child and resulted in her arrest for child endangerment. As to petitioner, the DHHR alleged that he failed to adequately support the child physically, emotionally, or financially due to his incarceration in federal prison. The petition alleged that petitioner was incarcerated in June of 2012 and was not projected to be released until

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, the proceedings in circuit court involved additional children that are not petitioner's biological children. On appeal, petitioner raises no assignment of error in regard to these children and, as such, the circuit court's rulings concerning these children are not at issue in this memorandum decision.

1

2021. That same month, both parents entered into stipulated adjudications. Specifically, petitioner stipulated that he neglected the child by his incarceration and his failure to care and provide for her. The circuit court then granted the mother a post-adjudicatory improvement period and scheduled a dispositional hearing for petitioner.

In March of 2016, the circuit court held a dispositional hearing as to petitioner, during which petitioner admitted to his lengthy criminal history that included convictions for driving under the influence, possession of marijuana, delivery of heroin, domestic violence, driving on a suspended license, and fleeing police. According to the record, petitioner had been incarcerated for the majority of his adult life. Petitioner also admitted that he had a drug addiction and would likely continue to suffer from the same for the rest of his life. Petitioner further testified to having attended rehabilitation several times to no avail. Ultimately, the circuit court terminated petitioner's parental rights upon findings that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination was necessary for the child's welfare. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

First, the Court finds that petitioner's argument that termination of his parental rights was improper because he was not an "active danger" to the child is without merit. According to petitioner, he never actively abused the child because he was incarcerated prior to her birth and, as such, he claims that the circuit court erred in terminating his parental rights. However, this argument is misplaced, as termination of parental rights at the dispositional phase of an abuse and neglect proceeding does not require additional proof of abuse or neglect. Instead, petitioner's argument speaks to whether the evidence at adjudication was sufficient to support the circuit court's findings. Pursuant to West Virginia Code § 49-4-601, "[a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing [or] neglecting . . . ." Here, the record is clear that petitioner stipulated to adjudication below. Specifically, petitioner admitted that he neglected the child

"due to his incarceration and his inability to care for or provide for the child . . . ." Because petitioner not only failed to object to the evidence at adjudication but, in fact, stipulated to his neglect of the child, the Court declines to find any error in regard to the circuit court's finding that petitioner is an abusing parent or its subsequent termination of his parental rights upon such a finding.[2]

Next, the Court finds no error in the circuit court's termination of petitioner's parental rights upon evidence of his lengthy criminal history and history of substance abuse. According to petitioner, there was no evidence that he was actively abusing substances when he was incarcerated in June of 2012 and, in fact, he was regularly drug tested as part of his parole. Further, petitioner argues that he was employed and possessed suitable housing prior to his incarceration. Ultimately, petitioner argues that his history of criminal convictions and substance abuse was insufficient to support termination of his parental rights, especially in light of this Court's holding that "[a] natural parent of an infant child does not forfeit his or her parental right to the custody of the child merely by reason of having been convicted of one or more charges of criminal offenses." Syl. Pt. 2, *Acton v. Flowers*, 154 W.Va. 209, 174 S.E.2d 742 (1970). The Court notes, however, that petitioner's reliance on *Acton* is misplaced.

The Court addressed *Acton* in the later case of *Cecil T*, wherein we clarified that "[i]ncarceration was not at issue in *Acton . . .*" and further explained that "incarceration is not a synonym for conviction, and this Court has never held that incarceration can not be the sole basis for terminating parental rights." 228 W.Va. at 96, 717 S.E.2d at 880. As such, it is clear that petitioner's argument on appeal is flawed, as it fundamentally misstates this Court's holdings in regard to a parent's incarceration and its bearing on abuse and neglect proceedings. In addressing this issue, we have held as follows:

> When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Id.* at 91, 717 S.E.2d at 875, Syl. Pt. 3. The record is clear in this matter that the circuit court considered these factors, although it was not required to do so because of the fact that additional factors and circumstances beyond incarceration were raised at disposition. Namely, the circuit

---

[2]The circuit court actually found petitioner to be "an abusive and neglectful parent." However, West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." As such, the Court will refer to petitioner as an "abusing parent" throughout this memorandum decision, as that term encompasses parents who have been adjudicated of either abuse or neglect.

court heard evidence regarding petitioner's drug addiction, which he admitted continued to affect him and would continue to do so in the future. The circuit court was also presented with evidence of petitioner's multiple attempts to correct his substance abuse through treatment programs, none of which have been successful. As such, it is clear that the circuit court considered not only the relevant factors from *Cecil T.*, but additional factors that affected the child's well-being in reaching its dispositional determination.

Finally, the Court finds no error in regard to the circuit court's finding that if the mother successfully completed an improvement period, "she [would] have the ability to make determinations in the future as to the nature of the relationship" between petitioner and the child. According to petitioner, the circuit court has failed to ensure that he will have a relationship with the child, especially in light of the fact that it will no longer exercise authority over the mother and the child once these proceedings terminate. The Court, however, does not agree. In support, petitioner essentially argues that his parental rights should have remained intact so long as the mother retained her parental rights. Alternatively, he argues that the child could have been placed in a legal guardianship until he is released from incarceration. However, these arguments contradict our prior holdings.

We have previously stated that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W.Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id.* Moreover, in regard to the possibility of a legal guardianship, we have held as follows:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.* at 91, 717 S.E.2d at 875, Syl. Pt. 4. The evidence below established that petitioner neglected the child by his failure to provide and care for her. The evidence further established that there was no reasonable likelihood that this condition of neglect could be substantially corrected in the near future due to petitioner's incarceration. As such, the circuit court found that the child's welfare necessitated termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon such findings. Accordingly, we find no error in the termination of petitioner's parental rights below.

For the foregoing reasons, we find no error in the circuit court's March 11, 2016, order, and we hereby affirm the same.

4

Affirmed.

**ISSUED**: October 11, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II